IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| WAYNE ODOM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | NO. 2:05-CV-97-RL |
| | ) | |
| STATE FARM INSURANCE COMPANIES, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

This matter is before the Court on Defendant's Motion for Partial Summary Judgment, filed on February 24, 2006. For the reasons set forth below, this motion is **GRANTED**. Accordingly, Plaintiff's claims for breach of the duty of good faith and fair dealing and for punitive damages are **DISMISSED** with prejudice.

BACKGROUND

The Plaintiff, Wayne Odom, originally filed his complaint in Lake County Superior Court against Defendant, State Farm Insurance Company ("State Farm") on February 28, 2005. Plaintiff alleges Defendant failed to pay uninsured motorist insurance sums due to him after Plaintiff was the victim of a hit and run car accident. Plaintiff further alleges that the Defendant breached the duty of good faith and

fair dealing and that Plaintiff is entitled to punitive damages. Defendant removed this action to this Court based on diversity jurisdiction.

On February 24, 2006, Defendant filed its Motion for Partial Summary Judgment on Plaintiff's claims for breach of the duty of good faith and fair dealing and for punitive damages. Plaintiff failed to respond, even after being ordered to do so by the Court on April 5, 2006.

DISCUSSION

The standards that generally govern summary judgment motions are familiar. Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper only if it is demonstrated that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In other words, the record must reveal that no reasonable jury could find for the nonmovant. *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 335 (7th Cir. 1991); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In deciding a motion for summary judgment, a court must view all facts in the light most favorable to the nonmovant. *Anderson*, 477 U.S. at 255; *NUCOR Corp. v. Aceros Y Maquilas De Occidente*, 28 F.3d 572, 583

(7th Cir. 1994).

The burden is upon the movant to identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," if any, that the movant believes "demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Once the movant has met this burden, the nonmovant may not rest upon mere allegations but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Becker v. Tenenbaum-Hill Assocs., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990); *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 620 (7th Cir. 1989). "Whether a fact is material depends on the substantive law underlying a particular claim and 'only disputes over facts that *might affect* the outcome of the suit under governing law will properly preclude the entry of summary judgment.'" *Walter v. Fiorenzo*, 840 F.2d 427, 434 (7th Cir. 1988) (emphasis in original) (citing *Anderson*, 477 U.S. at 248).

"[A] party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a *genuine* issue of material fact which requires trial." *Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir. 1988) (emphasis in original); *see also Hickey v. A.E. Staley Mfg.*, 995 F.2d 1385, 1391 (7th Cir. 1993). Therefore, if a party fails to establish the existence of an essential element on which the party bears the burden of proof at trial, summary

judgment will be appropriate. In this situation, there can be "'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

Plaintiff has failed to respond to Defendant's Motion for Partial Summary Judgment. The Court must consider the requirements of local Rule 56.1 in determining which facts it should rely upon in ruling on the instant summery judgment motion. This Rule requires the party seeking summery judgment to include a statement of material facts in the memorandum or appendix accompanying his summary judgment motion with appropriate citations. This Rule also provides that the party responding to a motion for summary judgment must include a statement of genuine issues together with appropriate citations. Failure to do so results in the Court accepting as true all properly supported facts presented in the moving party's statement of material facts. N.D. Ind. L.R. 56.1.

As Plaintiff has not responded, this Court assumes the facts, as claimed by the moving party and supported by admissible evidence, are admitted to exist without controversy. N.D. Ind. L.R. 56.1(b). This Court has reviewed Defendant's statement of material facts and finds that, with rare exception, they are adequately supported with appropriate citations to admissible evidence. Therefore, these facts are deemed true for purposes of this motion. Defendant's statement

of material facts is approximately eight pages in length and this Court need not restate each and every fact that is deemed admitted in this order. Only those facts that are pivotal in resolving the instant motion are included in this order.

As this matter comes before the Court pursuant to diversity jurisdiction, the Court "must apply the law of the state as it believes the highest court of the state would apply it if the issue were presently before that tribunal." *State Farm Mut. Auto. Ins. Co. v. Pate*, 275 F.3d 666, 669 (7th Cir. 2001). Because neither party raised a conflict of law issue, the applicable law is that of Indiana, the state where this Court sits. *Indiana Ins. Co. v. Pana Cmty. Unit Sch. Dist. No.8*, 314 F.3d 895, 900 (7th Cir. 2002).

Facts

On January 28, 2004, Plaintiff was the named insured in a policy of automobile insurance issued by State Farm. (Def's Ex. A, Decl. Page.) The policy provided Plaintiff with uninsured motor vehicle coverage with a limit of $50,000 per person, $100,000 per accident. (*Id*.) The pertinent section of the policy provided:

> We will pay damages for *bodily injury* . . . an *insured* is legally entitled to collect from the owner or driver of an *uninsured motor vehicle*. The *bodily injury* must be sustained by an insured . . . and caused by accident arising out of the operation, maintenance or use of an *uninsured motor vehicle*.

(*Id*. at p. 12) (emphases in original).

On January 28, 2004 Plaintiff was in a car accident in Gary, Indiana. Plaintiff reported and made a signed statement to the effect that an unidentified driver of a Caprice ran a stop sign and fish tailed through an intersection, side swiping Plaintiff's car on the driver's side. Plaintiff reported no physical injuries at the scene. The Indiana Officer at the scene reported Plaintiff to be in normal physical condition and estimated that Plaintiff's vehicle suffered between $750 and $1000 worth of damage.

Plaintiff's medical records note that he had a long history of back pain. Plaintiff was diagnosed fifteen years before the accident with back pain after a MRI was performed. Plaintiff also reported to one of the physicians treating him after the car accident that he had a ten year history of occasional back pain that had spontaneously resolved itself.

On January 30, 2004, Plaintiff saw his physician, Dr. I. Benjamin Anigbo, complaining of low back and neck pain. Dr. Anigbo assessed Plaintiff with low back pain and cervical radiculopathy secondary to a motor vehicle accident. X-Rays of Plaintiff's lumbar spine were ordered and later, on January 31, 2004, interpreted by Dr. Sreenivasa Guddetti as unremarkable, with no acute fracture, dislocation, spondlyosis, or destructive lesions or lytic.

Plaintiff returned to see Dr. Anigbo on February 2, 2004 for what was noted as tenderness and spasm in the lumbar spine. Dr. Anigbo noted left lumbar radiculopathy secondary to the motor vehicle accident. Plaintiff was ordered to have a lumbar MRI and was treated with vicodin. The MRI was interpreted by Dr. Maximo Bleza on February 9, 2004, as showing degenerative disk disease at multiple levels of the lumbar spine without evidence of focal disk protrusion.

Also following the accident, Plaintiff complained that his left pinky finger was bent after being jammed into the steering wheel. This condition was not reported until February 10, 2004. Plaintiff saw Dr. Joseph Schwartz for this injury on March 1, 2004 and was diagnosed with a mallet or avulsion fracture that was treated with a splint.

Also on March 1, 2004, Plaintiff saw Dr. Elian Shepherd and complained of back and left leg pain and lesser right leg pain. Plaintiff reported to Dr. Shepherd that he was seen by Dr. Anigbo the day after the accident, but that his symptoms had increased since then. Plaintiff reported that he was in pain most of the time, especially while walking. Another MRI of Plaintiff's lumbar region was ordered. Dr. Shailesh Bhatt interpreted the MRI as showing mild to moderate spinal stenosis at L4-5 related to ligamentous thickening, facet arthropathy, and a diffuse bulging disc. Plaintiff's diagnosis was lumbar spinal stenosis.

A few days later, on March 5, 2005, Plaintiff had a microscopic

decompression of L4-5 at Methodist Hospitals. Plaintiff was "doing well" at his follow-up on March 23, 2004.

The car accident was reported to State Farm the day after the accident, on January 29, 2004. Plaintiff described the accident to Defendant on January 30, 2004 and Defendant apportioned one hundred percent fault on the other driver. Plaintiff mentioned to the Defendant at this time that he had been having back and neck pains since the accident. Plaintiff said he felt only a small amount of pain the night of the accident and thought he could deal with it without treatment. However, the pain increased the next morning.

Plaintiff and Defendant spoke again on February 6, 2004. Plaintiff reported that he was not ready to settle his claim because he had not returned to work. Plaintiff had missed multiple opportunities to work. At this time, Plaintiff also told the Defendant about the treatment for his finger. Defendant was later advised on February 25, 2004, that Plaintiff would need back surgery. But, Plaintiff reported to Defendant that the physician performing the surgery did not believe the surgery was related to the accident, but that it was from a pre-existing condition that was exacerbated by the accident.

After the surgery, Defendant requested that Plaintiff provide documentation for his lost wages. On March 18, 2004, Plaintiff advised Defendant that he would only be seeking payment for the injury to his finger. Defendant's notes indicate this conversation, but note

that his medical records should be obtained and reviewed to see if the back injuries were related to the car accident. The following day, March 19, Plaintiff was ready to settle the claims with Defendant regarding the car accident however, Defendant refused as it was waiting for the medical records.

Plaintiff and Defendant interacted next on March 22, 2004. Defendant had noticed the lag time between the date of the accident and the report of the finger injury. Defendant also investigated Plaintiff's wage loss claims. Plaintiff indicated that he would accept $5,000 as compensation for his wage losses, but that he was also seeking compensation for his back pain. Defendant's notes indicate that the only claim Plaintiff had made was for his finger, but that compensation for the back pain aggravation would not be unreasonable.

Defendant made an evaluation of Plaintiff's claims on March 25, 2004. Defendant valued the wage loss at $2,136 and evaluated the total value of the claim, including compensation for symptoms associated with the accident for six weeks as between $4,321 and $4,906. Defendant offered $4,321 for the claim, but Plaintiff refused, arguing that his claim was worth $17,000. Defendant mailed a written offer to settle the claim on March 25, 2004. Thereafter, Plaintiff retained an attorney.

Defendant reviewed Plaintiff's claims again on April 27, 2004 and requested more medical records. Medical records were received as late

-9-

as June 21, 2004 and the Defendant again reviewed the case on September 14, 2004. At that time, Defendant determined that investigation into Plaintiff's pre-accident medical records would need to be done to evaluate the extent of the pre-existing injury.

On September 24, 2004, Defendant received a settlement brochure from Plaintiff's counsel that did not claim any present lost wages, but that alleged that injuries sustained in the accident would prevent Plaintiff from working so there would be future lost earning for which Plaintiff would be entitled. The brochure alleged medical bills totaling $22,765, $20,687 of which are related to the back surgery. Plaintiff valued the claim between $300,000 and $600,000, yet made a demand for $150,000 in the settlement brochure. The policy limit was set at $50,000, so Plaintiff was requesting three times the policy limit.

Defendant continued to investigate Plaintiff's medical condition prior to the accident. Defendant informed Plaintiff's counsel on November 30, 2004 that medical records were still being requested. Defendant made requests for medical opinions in December that were not responded to until early March of 2005. However, Plaintiff filed this suit on March 3, 2005 alleging breach of contract and breach of the duty of good faith and fair dealing.

Duty of Good Faith and Fair Dealing

Plaintiff seeks punitive damages against State Farm, alleging State Farm breached its duty of good faith and fair dealing. Insurance contracts create a legal duty on the insurer to deal in good faith with the insured. *Erie Ins. Co. v. Hickman*, 622 N.E.2d 515, 518 (Ind. 1993). The Indiana Supreme Court has recognized a cause of action for the tortious breach of an insurer's duty to deal with its insured in good faith. *Erie*, 622 N.E.2d at 519. The insurer's duty of good faith and fair dealing includes "the obligation to refrain from (1) making an unfounded refusal to pay policy proceeds; (2) causing an unfounded delay in making payment; (3) deceiving the insured; and (4) exercising any unfair advantage to pressure an insured into a settlement of his claim." *Erie*, 622 N.E.2d at 519.

However, the cause of action for good faith and fair dealing in insurance contracts does not arise in every situation where an insurance company erroneously denies an insured's claim. *Erie*, 622 N.E.2d at 520. Insurance companies are allowed to dispute, in good faith, about the amount of a valid claim or whether there is a valid claim at all without exposing themselves to this cause of action. *Erie*, 622 N.E.2d at 520.

The cause of action for bad faith and fair dealing in insurance arises where the insurer denies liability knowing that there is no rational, principled basis for the denial. *Freidline v. Shelby Ins.*

*Co.*, 774 N.E.2d 37, 40 (Ind. 2002). The insured must show by clear and convincing evidence that "the insurer had knowledge that there was no legitimate basis for denying liability." *Freidline*, 774 N.E.2d at 40.

In Indiana, punitive damages may be predicated upon a breach of an insurer's obligation to exercise good faith "only if there is clear and convincing evidence that the defendant acted with malice, fraud, negligence, or oppressiveness which was not the result of a mistake of fact or law, honest error or judgment, overzealousness, mere negligence, or other human failing." *Masonic Temple Ass'n of Crawfordsville v. Indiana Farmers Mut. Ins. Co.*, 779 N.E.2d 21, 26 (Ind. Ct. App. 2002).

The instant case bears no obvious evidence of bad faith on the part of Defendant. The insurer has no duty to promptly pay all claims without investigation. In this case, Defendant did not refuse to provide Plaintiff coverage, rather Defendant attempted to pay a sum which it believed was reasonable under the circumstances and which the Plaintiff denied. There was a rational basis for Defendant's valuation of Plaintiff's claim. Specifically, a treating physician had indicated the back injury was not caused by the accident, but merely exacerbated, and the Plaintiff had indicated to Defendant that he did not plan to seek benefits for this injury. Additionally, Plaintiff delayed considerably in reporting and seeking treatment for his only other injury — a broken finger. After Plaintiff disagreed

with the amount that Defendant initially offered, Defendant made attempts to investigate the matter through medical records in a reasonably timely manner. There was no unreasonable delay in processing Plaintiff's insurance claims to constitute a breach of the duty of good faith and fair dealing. There was also no clear and convincing evidence presented that the defendant acted with the sort of malice, fraud, negligence, or oppressiveness necessary to warrant the award of punitive damages.

In sum, no clear and convincing evidence has been presented that demonstrates Defendant acted with the requisite state of mind in denying coverage. Thus, while the issue of whether Defendant breached its insurance policy remains pending, the claim that Defendant acted in bad faith is not.

CONCLUSION

For the reasons set forth below, Defendant's Motion for Partial Summary Judgment is **GRANTED**. Accordingly, Plaintiffs claims for breach of the duty of good faith and fair dealing and for punitive damages are **DISMISSED** with prejudice.

**DATED: June 14, 2006**  /s/RUDY LOZANO, Judge
**United States District Court**